JENNIE M. TUTTLE, Appellant, v. THE IOWA STATE TRAVELING MEN'S ASSOCIATION.

**Accidental insurance.** One who by reason of an insane impulse
1  does an act which results in his death, comes within the terms of an accident policy providing for indemnity for death resulting " through and by external, violent and accidental means."

**Same:** CONTRACT: WHAT LAW GOVERNS: LIABILITY IN CASE OF SUICIDE.
2  Where an Iowa insurance association, employing no agents, received an application for membership of a resident of Missouri through the mails, with nothing to indicate that the certificate was to be returned to the member soliciting the application,

who by the law of Missouri was an agent of the association, and the by laws provided that no person should be considered a member until the directors had accepted the application and a certificate had been issued, it is held that the association had implied authority to use the mails for transmitting the certificate and that when issued and deposited in the mail addressed to the applicant it became an Iowa contract on the question of liability in case of suicide.

**Acceptance of application:** COMPLETION OF CONTRACT. Where the application for accident insurance proposes no definite plan for raising funds to pay losses but provides that the constitution and by laws shall be the basis of membership, the indemnity provided in the certificate issued pursuant thereto does not present a new condition which must be accepted by the insured before the contract becomes effective.

**Same.** Where by the terms of his application a member agrees to comply with the constitution and by laws of the association and that the same with the application shall constitute the basis of membership, he cannot say that exceptions from liability found in the articles which were not in the application, but when enumerated in the certificate, present new conditions which must be assented to by him before the contract is complete.

**Waiver.** The right to insist on the forfeiture of a contract of insurance is not waived by merely furnishing blank proofs of loss at the insured's request, there must be some acts or conduct of the insurer inconsistent with the intention to insist on the forfeiture.

WEAVER, J., dissenting to the opinion expressed in the second paragraph.

*Appeal from Polk District Court.*— HON. JAMES A. HOWE, Judge.

TUESDAY, OCTOBER 24, 1905.

REHEARING DENIED, TUESDAY, JANUARY 8, 1907.

TRIAL resulted in a directed verdict and judgment for the defendant. Plaintiff appeals.— *Affirmed.*

*Edmund H. McVey* and *C. F. Mead,* for appellant.

*Sullivan & Sullivan,* for appellee.

LADD, J.— Atrophy of the optic nerve had all but destroyed the eyesight of the assured, John A. Tuttle, and according to his notion " the pleasures of earth had gone " and " all was getting blank." Utterly wanting in that courage which buoyed the blind bard:

" Against Heaven's hand or will nor bate a jot,
        To argue not
    Of heart or hope; but still bear up and steer
        Right onward "
— he " burst the ties that bound him to this world."

He had been a member of the Iowa Traveling Men's Association since May 1, 1897, and in this action his beneficiary demands the indemnity of $5,000, stipulated in its articles of incorporation and by-laws on account of an injury " effected through or by external, violent, and accidental means." If his life was taken by his own voluntary act when in the possession of all his faculties, it is needless to say that the injury was not " through or by accidental means." If, however, the assured's act, causing death, sprung from an insane impulse of a disordered and unsound mind, it was neither voluntary nor intentional, but " through and by external violent and accidental means." On this point there is some conflict of opinion, but this view is sustained by the better reason and by the great weight of authority. *Accident Ins. Co. v. Crandal,* 120 U. S. 527 (7 Sup. Cit. 685, 30 L. Ed. 740); *Blackstone v. Standard Life & Accident Ins. Co.,* 74 Mich. 614 (42 N. W. 156, 3 L. R. A. 486); *Grand Lodge Ind. Order of Mutual Aid v. Wieting,* 168 Ill. 408 (48 N. E. 59, 61 Am. St. Rep. 123); *Healey v. Mutual Accident Ass'n,* 133 Ill. 556 (25 N. E. 52, 9 L. R. A. 371, 23 Am. St. Rep. 637); 19 Am. & Eng. Ency. of Law (2d Ed.) 75.

But the sixth article of incorporation excepted liability

1. ACCIDENT INSURANCE.

in case of death by "suicide while sane or insane," and this condition was valid. *Scarth v. Security Life Ins. Co.,*

**2. SAME: contract: what law governs; liability in case of suicide.** 75 Iowa, 346. Recovery, then, in the absence of any waiver, must be denied, unless it shall be found, as appellant contends it should be, that the contract between the assured and the association was entered into in Missouri, and therefore should be construed according to the laws of that State. This is the main question in the case, for under the statutes of Missouri, as construed by its court of last resort, suicide as such is not a defense, unless contemplated at the time of the application for insurance, "and any stipulation in the policy to the contrary shall be void" (section 5855, Rev. St. Mo. 1889). *Logan v. Fidelity & Casualty Co.,* 146 Mo. 114 (47 S. W. 948); *Brassfield v. Knights of Maccabees,* 92 Mo. App. 102. This statute relates, not merely to the remedy, but enters into and forms a part of the contracts of insurance made within the State. *Jarman v. Knights Templars' Life Indemnity. Co.* (C. C.) 95 Fed. 70.

Where, then, was the contract made? The association was organized under the laws of Iowa in 1892, with its principal place of business in the city of Des Moines, Ia. It employed no agents to solicit applications for membership, but relied on the good offices of its members to induce others to enter the association. To this end, blank applications were inclosed, with notices of assessment and other communications, with the thought that traveling men would direct the attention of their acquaintances of that vocation to the merits of the organization. The deceased resided in Kansas City, Mo., and April 29, 1897, signed an application, in so far as material, as follows:

Home Office, 305 Youngerman Block, Des Moines, Iowa. Application for Membership. Iowa State Traveling Men's Association. Formed for Mutual Benefit for Traveling Men Only. Benefits: $25.00 weekly indemnity, 52

weeks. $5,000 in case of death. $5,000 loss of both arms or both legs. $5,000 loss of both eyes. $1,250 loss of one eye. $1,250 loss of one hand or one foot. $2,500 for total disability over 2 years. Fill this blank and forward to F. E. Haley, Sec'y and Treas., Des Moines, Iowa. I herewith enclose $4 and apply for membership in the Iowa State Traveling Men's Association. Such membership to be based on the following statement of facts, which are warranted to be true and complete: [Here follow 21 questions and answers.] I do warrant the above to be true, and I hereby agree with the said association that I will comply with the requirements of its constitution and bylaws, which, with this declaration, shall be the basis of membership between myself and the said association. I also agree that the said association shall not be liable under its certificate of membership in any manner, except for bodily injuries sustained through external, violent and accidental means, nor shall said association be liable for any injury sustained by me while under the influence of intoxicating liquors or narcotics, or which shall happen on account of, by reason of, or in consequence of the use thereof; nor for accidental death, loss of limb or sight, disability resulting wholly or partially, directly or indirectly, from any of the following causes, conditions or acts, or when I am under the influence of or affected by any such cause, condition or act, to wit: Disease; bodily or mental infirmity; hernia; orchitis; fits; vertigo; sleep walking; medical or surgical treatment or amputation (amputation necessitated solely by injuries sustained and made within fifty-two weeks after the accident excepted); voluntary taking of poison; contact with poisonous ivy; intentional injury inflicted by me; voluntary overexertion; wrestling; racing. And I also agree that this application does not entitle me to any benefits for, or on account of, any injuries sustained by me before it is accepted by the board of directors.

He was recommended by Edward Somers, who mailed the application, with the membership fee of $4, at Kansas City, to the secretary of the association at Des Moines. It was received by the latter May 1st, and thereupon promptly " approved and accepted " by the board of directors, and a

certificate of membership, together with a copy of the constitution and by-laws, mailed at Des Moines to assured's address at Kansas City.

Counsel for appellant argue that under this state of facts the jury might have found that the contract between the association and the assured was effected at Kansas City, and base their contention on two grounds: (1) That Tuttle, in handing the application and fee to Somers, delivered these to the association at Kansas City, and, as he had not made use of the mails in so doing, there was no implied authority given to the association to deliver the certificate and other papers by post, and therefore these were not delivered until they reached him at Kansas City. (2) That the certificate was not responsive to the application, in that the articles and by-laws contained conditions not contemplated by the application, and hence the contract was not affected until the subsequent consent of Tuttle in Kansas City, manifested by the retention of the certificate and the payment of assessments. These will be considered in the order stated.

The first amounts to an assertion that the proposition to become a member was both made and accepted in Missouri, and for this reason the contract was there consummated. But neither of these contentions can be sustained. Somers neither received nor expected compensation, though he may have been in a sense the agent of the association within the meaning of the Missouri statute, that one "who shall receive or receipt any money from other persons, to be transmitted to any insurance company or association either in or out of the State (but not authorized to do business in the State) for a policy or policies of insurance issued by such company or association . . . shall be deemed to all intents and purposes an agent . . . of such company or association." Section 5915, Rev. St. Mo. 1889. But Somers was not the agent in doing something no one but the board of directors could do. The by-laws

of defendant provided that " no person shall be considered as a member, nor shall this association be liable in any manner to any person as a member herein, until said directors have accepted his application, and a certificate of membership has been issued to him." Indeed, the application indicated that as a condition to insurance the action of the board of directors was essential. So that, in any event, Somers could not act for the association in passing on the application, and the assured was fully aware that it must be forwarded to Des Moines and there presented to and acted upon by the board of directors of the association. The proposition was to the board of directors, and not to Somers, and, though without information as to any arrangement between them, it may well be assumed, in view of the distance and nature of the business to be transacted, that, in placing the application in the hands of Somers, Tuttle contemplated that he would transmit it to the association by ordinary mode, approved by usage and the general custom of the world; that is, by the government post. Nothing in the application indicated that a response through Somers was desired. It was directed by Tuttle to the association, and the desire of a direct response only was to be inferred. The by-laws exacted that it be issued to him.

But was authority to respond by mail to be implied? The request to communicate an acceptance by mail may be inferred (1) where the post is used to make the offer and no other mode is suggested, and (2) where the circumstances are such that it must have been contemplated that the post would be made use of in returning an answer. 9 Cyc. 295. In what other way could the assured have anticipated a response? His application had been forwarded by the post. The matter to be transmitted back was suitable for the mails. The distance was such as to preclude thought of personal delivery. There was nothing in the letter of Somers to indicate that it was to be delivered through him or that either he or Tuttle so desired. We think authority to

post the certificate and other papers clearly implied from the circumstances disclosed. The correct rule is well stated in *Henthorn v. Fraser,* 2 Ch. D. 27. " Where the circumstances are such that it must have been within the contemplation of the parties that, according to the ordinary usage of mankind, the post might be used as a means of communicating the acceptance of an offer, the acceptance is complete as soon as it is posted." In that case the proposition was handed to plaintiff, who resided at Birkenhead, while at Liverpool. On the following day, at 3:50 p. m., he mailed an acceptance at Birkenhead, which did not reach defendant's office until 8:30 o'clock of the same evening. On the same day defendant posted a letter withdrawing the offer before 1 o'clock, and it reached plaintiff at 5:30 o'clock in the afternoon. From the residence of plaintiff in another place and the fact that he would likely return there before acting on the offer, having been allowed fourteen days, it was inferred that an answer by mail was contemplated, and, as the contract was completed by mail in the acceptance before plaintiff had knowledge of the attempt to withdraw the offer, it was upheld as completing the contract which was enforced specifically.

The authorities relied on by appellant do not obviate the conclusion stated. In *Scottish-American Mtg. Co. v. Davis,* 96 Tex. Sup. 504 (74 S. W. 17), one Couts submitted personally a proposition to buy land. This was accepted with a modification. Thereupon Couts mailed a letter of acceptance, but before it was delivered intercepted it, and procured its return by the postal authorities before its delivery to the seller, and the court held that he was not bound, for the reason that the proposition had not been submitted through the mails, and therefore no implication arose authorizing a response to be so transmitted, and, as the letter was never actually delivered, he was not bound. Whether such an inference might arise from other circumstances was not considered. Other cases cited, as *Millikin v. Pratt,*

125 Mass. 374 (28 Am. Rep. 241), where the instrument sued on was forwarded to take effect in another State, have no bearing on the question at issue. In the circumstances of this case we have no hesitation in holding that it was contemplated that the mails should be used in forwarding the certificate and other papers to Tuttle, and that such certificate was " issued to him " when duly executed by the officers of the association, inclosed in an envelope duly addressed and stamped, and deposited in the United States mail at Des Moines. See *Ferrier v. Storer,* 63 Iowa, 487; *Hunt v. Higman,* 70 Iowa, 406; *Moore v. Pierson,* 6 Iowa, 279.

The second ground of counsel's argument, that the contract was made in Missouri, is founded on the proposition that, to constitute a contract, the acceptance of the offer must assent to it entirely and add nothing to it. If the acceptance interposes a new condition, a contract is not effected until this is assented to by the party making the offer. Appellant insists that the conditions of the indemnity contained in the constitution and by-laws were not such as contemplated by the application, in that (1) absolute indemnity was proposed, while that provided was that which might be raised by assessment, and (2) that an exception of death from " suicide while sane or insane " is found in the articles of incorporation, though excluded from the application. It will appear from an examination of the application that the manner of raising the various sums mentioned is not alluded to. For all that appears, they may be raised by any of the methods ordinarily resorted to by life insurance companies. The applicant cannot, then, be said to have proposed any particular method nor the association in preparing the blank forms to have made any representations with reference thereto. This contention must then be rejected. Decisions construing policies or certificates to stipulate absolute indemnity are not in point, for here the state-

3. ACCEPTANCE OF APPLICATION: completion of contract.

ments are contained, not in the policy or certificate, but in the application therefor, and when construed in connection with the certificate, which merely declared Tuttle a member and that he was "entitled to all the benefits accruing from such membership, under the provisions of the constitution and by-laws of this association" no doubt can remain that a promise of absolute indemnity was not intended, but such as was provided by the articles of incorporation. Moreover, the application expressly so indicated as will hereafter appear.

An examination of the application discloses that many exceptions from liability are stated, and from this enumeration it said that the inference should be drawn that all others were excluded, and therefore 4. SAME. that the applicant did not ask for insurance including another exception found in the articles, namely, "death by suicide while sane or insane," and so defendant in issuing the certificate to Tuttle added a condition, and for this reason the contract was not effected until the latter accepted at Kansas City. But this contention overlooks a very material portion of the application, which reads: "I hereby agree with the said association that I will comply with the requirements of its constitution and by-laws, which, with this declaration, shall be the basis of membership between myself and the said association." It is to be noted that the first clause binds the applicant to observe his duties and obligations due to the association as a member, and this, even though extended to changes in the articles or by-laws, will not authorize the association by amendment to interfere with the other and distinct relations between the association, as insurer, and the member, as insured, as by reducing the amount of indemnity to be paid. *Newhall v. American Legion of Honor,* 181 Mass. 111 (63 N. E. 1); *Bragaw v. Supreme Lodge,* 128 N. C. 354 (38 S. E. 905, 54 L. R. A. 602). By the second clause the constitution and by-laws with the application, are made the basis of mem-

bership between him and the said association. The application was on the express condition that the articles of incorporation (called constitution) and by-laws were to form the basis of the contract constituting him a member of the association. If, then, exceptions are to be found in the articles, not enumerated in the application, they cannot be regarded as new conditions, but the rather as part of those proposed, though not specifically mentioned. Indeed, the second by-law declares that the certificate of membership, together with the application therefor and the articles of incorporation and by-laws, " constitute the contract between the member and this association," and it was undoubtedly in view of this that the stipulation quoted was inserted in the application.

We have not adverted to the contention that defendant was " doing business " in Missouri; for, even though this be true, it could have no bearing in fixing the *locus in quo* of the particular contract.

The plaintiff also pleaded a waiver of the defense of suicide. In support thereof, it was made to appear that her attorneys wrote to the association on the 17th day of July, 1901, saying: " Mrs. Tuttle is ready to furnish proofs of death and to comply in every respect with the rules and by-laws of the association. If you will kindly forward to us blanks for the proper presentation of the claim, we will see that the same are executed and filled out and will promptly send them to you. Your early answer hereto will greatly oblige." To this the secretary of the association responded in a letter dated July 20th, but postmarked July 22d, at 5:30 p. m.: " Mr. Tuttle was at the time of his death a member of the association in good standing. We beg, however, to advise you that the association gives to its members and their beneficiaries indemnity only on account of total disability or death caused by accident. There is nothing in your letter to indicate that Mr. Tuttle died as the result of an acci-

5. WAIVER.

dent. However, at your request, we forward you blanks. In forwarding you these blanks, it is with a distinct understanding that no rights the association may have are waived. These blanks are sent you for your own convenience." The association's attorney had gone to Hutchinson, Kan., to investigate the cause of death on the 17th and returned on the 21st of July, and the evidence was such that the jury might have found that he had informed the secretary that deceased had committed suicide before the above letter was mailed to plaintiff's attorneys, who thereafter at considerable expense procured the proofs of loss and forwarded them to the association. At their request a few days later a copy of the application and of the articles and by-laws was sent to them.

The plaintiff argues that the principle often applied, that where the insurer, after learning of facts establishing a forfeiture, requires the preparation of proofs of loss, he thereby waives the forfeiture, is applicable. We think otherwise. Nothing was done by plaintiff at the instance or request of the association, nor did its letter carry any assurance, save that the blanks were forwarded merely for their convenience. Proofs of death were exacted as a condition precedent to payment of loss by the by-laws, and the courtesy exhibited in supplying these blanks at the insured's request ought not alone to be construed into a waiver of a defense, which the insurer was then under no obligation to disclose. The test to be applied is whether the acts and conduct of the insurer are inconsistent with the intention to insist on the defense, *Lake v. Farmer Ins. Co.*, 110 Iowa, 473, and as seen nothing which the association wrote or forwarded can bear such a construction. The court rightly held there was no evidence of waiver.— *Affirmed.*

WEAVER, J.— I dissent from the proposition that the certificate is to be treated and construed as an Iowa contract. The application was solicited, made and delivered in

Missouri. The first premium was paid in Missouri. The defendant, without any order or direction from the assured, sent the certificate to him in Missouri. The defendant, in thus doing an insurance business in that State, became subject to its statutes, and its contracts so made are to be construed and enforced according to its laws. *Ins. Co. v. Cravens*, 178 U. S. 389 (20 Sup. Ct. 962, 44 L. Ed. 1116). To hold otherwise and assist the defendant in defeating or avoiding the laws of our sister States is to open the door to the nullification of our insurance statutes, so far as they apply to foreign corporations doing business in this jurisdiction.