SINGMASTER & SON, Appellees, v. W. A. ROBINSON, Appellant,

**SALES:** Warranties—Waiver—Evidence. A written warranty, 1 limited as to duration and remedy in case of a breach, may not be ignored in the absence of fraud or waiver.

**EVIDENCE:** Best and Secondary—Notice to Produce. Copies of 2 correspondence passing between litigants are admissible only after due notice to produce the originals.

**EVIDENCE:** Parol as Affecting Writing—Contemporaneous · Waiv- 3 er. Oral evidence of a waiver of conditions and limitations on a warranty embraced in a written bill of sale and contemporaneous with the execution thereof, is inadmissible.

*Appeal from Keokuk District Court.*—K. E. WILLCOCKSON, Judge.

SATURDAY, OCTOBER 27, 1917.

PLAINTIFF brought this action upon a promissory note. The defendant admitted the execution of the note and pleaded a counterclaim for damages for a breach of warranty in the sale of a stallion, the note sued on being given for the

purchase price thereof. At the close of the evidence, the trial court dismissed the counterclaim and entered judgment for the plaintiff for the amount of the note. The defendant has appealed.—*Affirmed.*

*Hamilton & Beatty,* for appellant.

*Talley & Hamilton,* for appellees.

1. SALES: warranties: waiver: evidence. EVANS, J.—1. The note in suit is the last one of a series of notes executed and delivered by defendant to the plaintiff's assignor as the purchase price of the stallion. The contract of purchase was made on May 5, 1911, and the purchase price was $1,100. The purchase was made from Singmaster & Walker, a partnership firm which included in its membership the members of the partnership firm of Singmaster & Son, which is plaintiff herein. The vendor of the horse delivered to the defendant a written contract of sale containing the following guarantee:

"We hereby guarantee the above named stallion to be a foal getter of 50 per cent. of the good producing mares bred to him owned by the above named stockholders, provided he shall have plenty of exercise, and proper feeding and grooming, care and handling, and in case he should not so prove, we agree to replace him with another of the same breed and price, upon the delivery to us at Keota, Iowa, of the above named horse in as good and sound condition as he is at present; and the purchasers of said horse hereby agree to accept said second horse so furnished in full satisfaction of any claim for damages on account of said warranty. This guarantee expires January 1, 1912."

This writing was signed by both vendor and vendee. The particular breach complained of by the defendant is that the horse purchased proved not to be a 50 per cent foal getter. The defendant kept the horse in question until October 23, 1913, on which date he died. The defendant had

not at any time elected to return the horse and to claim another under the provisions of the guarantee above set forth. It does not appear that the death resulted in any manner from the condition complained of as a breach of the warranty. The contract of guaranty by its terms purported to expire on January 1, 1912. The defendant contends that the strict terms of the guaranty were waived by the vendor by the following correspondence:

"Mondamin, Ia. July 31, 1912.

"Messrs. Singmaster & Walker, Keota, Iowa.

"Gentlemen:

"I am enclosing you check for the first payment on the Stallion Itala 64961, bought of you on May 5th, 1911. $300.00 principal, $4.50 interest from May 5th to August 1st, 1912. I trust you find this amount correct.

"I am very much afraid that this horse will not prove a good foal getter. As I only bred one mare a day last season and only bred 42 during the season and there are but 12 colts. And I turned down all nonproducers except one.

"I am trying him out again this year with only two a day and have bred 48 mares. I am teaching him to work now and will work him a little this fall and winter, just enough to keep him healthy and rugged. But if he does not make any better showing this year than last I will expect some help in the matter, but in the meantime I will do everything that is possible to make him a sure foal getter.

"Yours truly,

"W. A. Robinson."

"Keota, Ia., Aug. 3, 1912.

"W. A. Robinson, Mondamin, Ia.

"Dear Sir:

"Enclosed find your note cancelled. The interest has been endorsed on the other two notes and we are very thankful for your promptness in the matter. Wishing you an abundant and prosperous season for the horse and we hope

your way of treating him will be successful and that your horse will prove all you expect of him and be a good breeder.

"Yours with regards,

"C. F. Singmaster.

"Would you care to take up the other notes without interest?"

If there was any waiver on the part of the plaintiff, it must be found in the above letter. Appellant does not point out what particular language of the letter is claimed to constitute a waiver, and we are unable to see anything that can fairly be construed as such waiver. Neither was there any declaration in the letter written by the defendant of any purpose to return the horse and to claim another. There was a suggestion therein that he might "want help." There is no claim of fraud or false representations in the case. The horse purchased was only three years old, and his foal-getting qualities had never been tested. The case involves no element of bad faith. The parties stipulated a qualified remedy in the event of a failure of the guarantee. The provisions of the contract are wholly ignored by the defendant in his counterclaim, and he seeks to recover damages precisely as though no qualification were attached to the guarantee. His theory is that, because of the death of the horse, it had become impossible for him to return him, and that he is entitled to pursue his remedy notwithstanding the death of the horse. If the death had resulted from the conditions which constituted the breach of guarantee, there might be force to plaintiff's contention; but such is not the case. It is not claimed that the horse was diseased at the time of the purchase and that such disease resulted in his death. The defendant offered further evidence of alleged waiver which was rejected by the court. These rulings will be considered in the next division hereof. Giving full consideration to the evidence actually admitted

by the court, we think there is no fair ground to claim either that the defendant complied with the conditions of the guarantee or that he proved any waiver thereof.

2. The defendant contends that he had

**2. EVIDENCE:**
**best and sec-**
**ondary: notice**
**to produce.**

written a letter to the plaintiff on June 30, 1913. He offered in evidence a purported copy of such letter, which was appropriately objected to. The defendant had served no notice to produce and laid no foundation for the introduction of secondary evidence. The objection thereto was, therefore, properly sustained. The defendant also offered to

**3. EVIDENCE:**
**parol as af-**
**fecting writ-**
**ing: contem-**
**poraneous**
**waiver.**

testify to an oral waiver of the qualifications of the written guarantee immediately after the same was signed, and before the notes and mortgage were signed. He also offered to testify that he would not have signed the notes and mortgage except for such oral waiver. Manifestly the written bill of sale, including the guarantee, and the notes and mortgage for the purchase money were all parts of the same transaction. They were all made and delivered at the same sitting. If the vendor made any oral statements or agreements after the signing of the contract and before the signing of the note, they were, in legal effect, contemporaneous with the writing. They were, therefore, properly rejected on that ground.

We find no error in the rulings of the trial court. The judgment is therefore—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.