STATE INSURANCE COMPANY, Appellee, v. J. E. LOCK, Appellant.

**INSURANCE:  Acceptance of Application.**  The issuance and *mailing*
1  of a policy of insurance to the insured, in response to the insured's application by *mail* for insurance, constitutes an acceptance of said application.

**INSURANCE:  Proof of Loss—Nonwaiver.**  A waiver of strict proof
2  of loss under the terms of the policy may not be established on the basis of an informal letter from the insured, which was not originally intended nor ever treated as proofs of loss.

*Appeal from Des Moines Municipal Court.—*T. L. SELLERS, Judge.

JUNE 25, 1921.

ACTION at law to recover upon defendant's note or agreement in an application for insurance to pay premium. Plaintiff claims that $90 is due. Defendant alleges that the consideration for the note has wholly failed, for that the application was never accepted by a delivery of the policy to him. By way of counterclaim, defendant says that, if the policy was in force, insuring him against loss of his crops by hail, then he is entitled to recover from the plaintiff $500 for loss of crops: $150 for loss in July and $350 in August. He alleges that he gave proofs of loss within the proper time by letter to the plaintiff, and that plaintiff waived any other or further proofs. These matters were all appropriately answered by plaintiff in reply. Trial to a jury. At the close of the evidence, each party moved for a directed verdict. Defendant's motion was overruled, and plaintiff's sustained; and verdict and judgment were rendered in favor of plaintiff for the $90, with interest. The defendant appeals.—*Affirmed.*

*Wm. M. Jackson* and *Miller, Kelly, Shuttleworth & Seeburger,* for appellant.

*Miller, Parker, Riley & Stewart,* for appellee.

PRESTON, J.—Defendant resides on his farm, about a mile and a half from Lenox, Iowa. On June 2, 1919, he made application, through plaintiff's agent at Lenox, for hail insurance on

1. INSURANCE: acceptance of application.

his crops for indemnity against loss by hail between June 23d and September 20th of that year. The application, signed by defendant, recites that his post-office address is Lenox, R. F. D. No. . . . ., and that, if a policy is issued upon the application, he agrees to accept the same, subject to the provisions and stipulations herein stated. The application further recites that, in consideration thereof, he agrees to pay the $90 sued on, which was payable September 1, 1919. Proper demand for payment was made by plaintiff. The application was received by the plaintiff, and a policy was is-

sued by the company and mailed at Des Moines to defendant at Lenox, Iowa. It was stamped and placed in the mails at Des Moines, Iowa, addressed to defendant. It was in a "return" envelope, but it was never returned to the plaintiff. In his evidence, defendant gives the number of his rural route; but the number was not given in the application. We shall not go into the evidence introduced on behalf of plaintiff to show that the policy was issued, stamped, addressed, mailed, and so on. The proper officers, mailing clerk, and so on, so testify, and reasons were given why this particular application and policy are remembered. There is no conflict in the evidence as to these matters. The terms of the policy are established. The defendant testifies that the policy was never received by him, and that the manual possession thereof was never delivered to him by mail or otherwise. He testifies as to partial destruction of his crops by hail: $150 about July 4, 1919, and $350 in August, 1919. The policy provides, among other things, that the amount payable per acre for total destruction or total destruction of a part shall be the amount fixed in the policy, and that, in the event of partial destruction, the amount payable shall be in such proportion to the amount per acre specified therein as the value of the damaged portion of said crops bears to the value of the sound condition of the particular crop so damaged, with no deduction for the harvesting of the destroyed part; that written notice of any damage should be sent (registered mail) by the owner to the company at Des Moines, which notice should be mailed within 10 days from the happening of the loss, and should state the number of the policy, the date and hour of the hailstorm, and the amounts, if any, of the other insurance against hail carried by insured; and further, that, within 60 days after any loss by hail to any crop covered by the policy, insured shall "furnish proof of loss, under oath, of the party insured under this policy, stating the date and number of this policy, the correct description of the land upon which were growing the crops so damaged, and the percentage of damage done to the crop on each parcel of land so affected. * * * A failure of insured to furnish such proof of loss within the time herein specified will relieve the company from any and all liability under this policy."

About September 1, 1919, plaintiff notified defendant by letter that the premium was due, and demanded payment. This letter was received by defendant. The defendant testifies that he kept no record of the date on which his two losses occurred because he didn't think he had any policy of insurance in force; that, from the fact that he had not received the policy, he inferred and assumed that his application had not been accepted by the company. He testifies further that, upon receipt of plaintiff's letter, and within a day or two thereafter, he made plaintiff a proposition that, if it would pay his losses, he would pay the $90 premium.

"Q. What was the proposition you made them? A. That, if they wanted to consider my loss, I would consider the premium. Q. Was that all of the proposition you made them? A. That was the sum of it. I did not tell them how much of a loss I had. I don't believe I told them what it was. Q. Now you didn't send the company any proofs of notice, did you,—any verified or sworn statement of a loss which you had had? A. Nothing only— Q. The only thing you sent the company, you contend, is the letter you wrote them, offering a proposition, as you stated it? A. Yes, sir. Q. What, if anything, did you tell them in that letter? A. I told them that I never had received any policy, and, if they would consider my damage I had had on my corn, why, I would consider the premium. I would be glad to pay them their premium if they would pay me my damage."

He says he kept no copy of the letter, and that it was written with pencil and addressed to the company at Des Moines. He says further that in the letter he mentioned that the damage was caused by hail. The evidence tends to show that this letter was received by plaintiff, since defendant testifies that he saw it later in possession of plaintiff's collector. He received no word from the company in response to his letter. The letter was not produced or introduced in evidence, and the foregoing is the substance of the evidence in reference to the alleged proof of loss. He says that later, and in October, a collector for plaintiff came to Lenox and again demanded payment of the note, and defendant then tried to get him to settle; and that the collector told him that he had no authority to settle or arbitrate, or

even to go and look at the crop; that the corn had frosted and dried up considerably then, but that the effects of the hail were still shown on the stalks, which he pointed out to the collector; that all the collector wanted was to collect the $90, and he didn't offer to consider the claim at all; that neither the company nor anyone for it made objection to the form of the so-called proof. Defendant testified that he had 90 acres of corn,—not in one piece; that he had carried hail insurance before, and read his policies, and had had losses under them; and that he had notified the company under other policies of his loss. The two main points in the case are whether, by what plaintiff did, there was an acceptance of defendant's application and a completed contract, and whether, under the record, there was a waiver of proofs of loss.

1. It seems to be conceded in argument by both parties that an application for insurance does not purport to contain all of the terms and conditions of the policy applied for, and that the application is for such insurance as, in view of the particulars submitted, the company sells, and that there must be an acceptance or meeting of the minds. As appellant puts it, an application for insurance constitutes an offer, and not a completed contract, and the offer must be accepted (citing numerous cases); and we do not understand appellee to controvert the proposition. Appellant states the general rule that the acceptance must be communicated to the offerer. They concede, however, that there is an exception to the foregoing rule, and that is the rule of post, so called. They argue that the rule does not apply here, because the offer was not made by post, and an acceptance by post was not reasonably within the contemplation of the parties. They argue, too, that, in the absence of any other evidence to show consent of the company in the making of a contract of insurance, delivery of the policy must be shown. On these last two propositions they cite 9 Cyc. 295; 19 Cyc. 603; *Tuttle v. Iowa S. T. M. Assn.*, 132 Iowa 652. Appellee also cites the *Tuttle* case to sustain their proposition, which will be stated in a moment. Appellant further contends that the presumption that a letter properly addressed and mailed was received by the addressee, is rebuttable. *Watson v. Richardson*, 110 Iowa 673, and other cases. If it was necessary to show that the policy was

actually delivered to the defendant,—that is, that there was an actual manual delivery into his possession, either in person or otherwise,—there would be force in appellant's contention that defendant's testimony that he did not actually receive the policy would make a jury question. The policy may have been lost in the mails and not received by him, even though it had been mailed, properly addressed, stamped, etc. But, under the authorities cited by appellee, we do not understand that it is necessary to show such a delivery, in order to constitute an acceptance of the offer or application.

Going back a moment, it is said that the offer was not made by post. It appears that the application was taken by an agent of plaintiff, at Lenox, and, as we understand the record, it was by him forwarded to the plaintiff company at Des Moines by mail. Substantially all the business between plaintiff and defendant was conducted through the mails. The policy itself provides that notice should be sent through the mails, registered. Considering these circumstances, and all the circumstances in the record, and the distance between Des Moines and Lenox, it seems to us that it was reasonably contemplated that the policy, when the application was accepted, should be sent by post; that no other method could be said to be reasonably contemplated by the parties. On the other hand, it is contended by appellee that the rule is that a valid contract requires an offer and an acceptance, which must be communicated to the offerer, or put in the course of communication by an act; and further that, where the parties must have contemplated that, in accordance with the ordinary usage of mankind, the post would be used to communicate the acceptance, the acceptance is communicated and the contract complete from the moment the letter addressed to the offerer, containing the acceptance, is mailed by the offeree. Stating it in another way, they put it that an application for insurance, sent either directly or through an insurance agent, to the main office of an insurance company in another town, is accepted and the contract of insurance completed by the execution of the policy and its deposit in the mail, addressed either to the applicant or to the agent of the insurance company, for delivery to the applicant. We think this is the rule, not only of our own cases, but of the holdings of appellate courts

in other jurisdictions.  On the first proposition, appellee cites *Tuttle v. Iowa S. T. M. Assn.,* supra; 13 Corpus Juris 284, 300, 301; 9 Cyc. 270, 295.  To the second proposition, they cite the *Tuttle* case; *Born v. Home Ins. Co.,* 120 Iowa 299, 302; *Armstrong v. Mutual L. Ins. Co.,* 121 Iowa 362, 374; *Unterharnscheidt v. Missouri S. L. Ins. Co.,* 160 Iowa 223; 1 Cooley's Briefs on the Law of Insurance 447; *Kilborn v. Prudential Ins. Co.,* 99 Minn. 176 (108 N. W. 861); *Lamson Bros. v. Bane,* 206 Fed. 253, 258 (124 C. C. A. 121); and other cases.  As said, the evidence is undisputed that this policy was mailed.  We are of opinion that this constituted an acceptance, and that the policy was in force, and that there was no failure of consideration.  The trial court properly directed a verdict for plaintiff on the plaintiff's claim.

2.  It is contended by appellant that a failure to make timely objection to the form or sufficiency of the notice or proof of loss by an assured amounts to a waiver of the requirements of the policy.  On this proposition they cite *Young & Co. v. Hartford Fire Ins. Co.,* 45 Iowa 377; *Green v. Des Moines Fire Ins. Co.,* 84 Iowa 135; *Bach v. State Ins. Co.,* 64 Iowa 595; *Condon v. Des Moines Mut. Hail Assn.,* 120 Iowa 80; *Pringle v. Des Moines Ins. Co.,* 107 Iowa 742; *Ruthven Bros. v. American Fire Ins. Co.,* 102 Iowa 550; 19 Cyc. 862.  But this rule applies only where there has been some apparent attempt on the part of the insured to comply with the requirements as to furnishing the necessary proof of loss.  *Ervay v. Fire Assn.,* 119 Iowa 304.

2. INSURANCE: proof of loss: nonwaiver.

On the testimony of defendant, it appears that he did not consider the letter proofs of loss, or that he was attempting to comply with the policy.  He was at that time claiming, and he so stated in the letter itself, that he had never received the policy, and was contending, even at the trial, that there never was any valid policy of insurance.  It is hardly possible that he would be making a claim for insurance when he himself considered that he had none.  He did not, in fact, under his own evidence, make any definite claim for insurance.  The letter did not, in many respects, comply, or attempt to comply, with the provisions of the policy.  It was not under oath; it did not describe the land; it did not give the amount of his damage or

the date of the two alleged hailstorms. As he puts it, when they asked him to pay the premium of $90, he simply proposed to them that, if they would pay his loss of about $500, he would pay the premium. Naturally enough, he would be glad to pay the $90 if he could secure the larger amount by so doing. Defendant's letter was in answer to plaintiff's demand for payment of the premium, and but for the demand it is not likely that defendant ever would have sent his letter, or so-called proofs of loss. There was no response by plaintiff to defendant's letter, and there is nothing in the record to indicate that the company led defendant to think that nothing further was necessary as constituting proof of loss. Nor did either the company or its agent or collector at any time mislead defendant into believing that it would accept the letter as a proof of loss. The collector, in October, told defendant that he had no authority to consider the matter, but that he had come merely to collect the payment due on the note. We think the trial court properly held that there were no proofs of loss, and that there was no waiver. The judgment is—*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.