PHILLIP MILLER, Appellee, v. MUTUAL FIRE AND TORNADO ASSOCIATION of Cedar Rapids, Appellant.

No. 42763.

MARCH 5, 1935.

Grimm, Elliott, Shuttleworth & Ingersoll, for appellant.

O. M. Slaymaker and R. E. Killmar, for appellee.

DONEGAN, J.—In June, 1930, the Mutual Fire & Tornado Association of Cedar Rapids, Iowa, issued a policy of insurance which, among other things, insured the horses owned by Phillip Miller against damage by fire, lightning and other causes. On July 13, 1932, while such policy of insurance was in effect, Miller notified W. S. Barnard, the agent who had solicited the said policy of insurance, that one of the horses thus insured had been injured by lightning on July 10, 1932, and, on the same day Barnard wrote the insurance company a letter telling it of the loss claimed by Miller. No acknowledgment of the receipt of this letter was ever made by the insurance company to either Miller or Barnard, and on August 3, 1932, upon the request of Miller, Barnard again wrote the insurance company in regard to the matter. No answer or other communication was received from the insurance company in response to this second letter. Thereafter, some time during the month of October, an adjuster of the insurance company went to Miller's farm and talked to him about his claim. According to Miller's testimony, the agent of the insurance company told him that he had no claim. Miller thereupon became indignant, and the agent finally said:

"Now, old man, don't get excited. I am going down here. I have got some more claims like this. I am going down here to see then I will be back and if this mare ain't right, I will pay for it."

No further communications passed between Miller and the insurance company until March 11, 1933, when, at the request of Miller, Barnard again wrote the insurance company asking it what it intended to do about Miller's loss. The insurance company replied to this letter on March 15, 1933, and stated that its record in regard to the case had been closed since October 31, 1932, when its adjuster reported to it that he had informed Mr. Miller that the provisions of the policy contract would have to be followed and that no claim could be allowed. Following the receipt of this letter, Miller instituted the present action, which resulted in a verdict and judgment for the plaintiff in the sum of $150. From such judgment and rulings, the defendant appeals.

Many errors are alleged by appellant as grounds for reversal. We will first consider appellant's contention that the court erred in submitting the case to the jury, because there was no evidence whatever that the appellee had complied with the requirements of the policy in regard to furnishing proofs of loss, and because there was no evidence to support the appellee's claim that such proofs of loss had been waived.

The policy in question contained the following provision:

"XIV. If loss occur the insured shall as soon as practicable after he ascertains the fact of such loss, give notice in writing thereof to the association, protect the property from further damage, forthwith separate the damaged and undamaged personal property, and put it in the best possible order, and shall, within sixty days from the date of loss, except loss or damage to live stock, which notice must be given in five (5) days, furnish this association with notice thereof in writing accompanied by affidavit stating the facts as to how the loss occurred and the extent thereof, so far as such facts are within his knowledge."

The above provisions of the policy in regard to the time for giving notice and furnishing affidavit of loss conform to the provisions of sections 9045 and 9046, Codes of 1927 and 1931, and it is not claimed that any affidavit of loss was ever furnished by appellee.

The letters sent to the insurance company by Barnard on July 13 and August 3, 1932, are as follows:

"Osceola, Iowa, July 13, 32.

"J. Lindley Coon, Sec'y

"Dear Sir: Mr. Phillip Miller, insured under policy No. 80681, came to my office this morning and said he had a mare damaged by lightning on the night of July 10, 1932. I asked him if there was any marks on the animal and he said none that he could see. I told him I would report it to the company and wait and see the outcome as the mare would probably be better or die in a few days and meantime if she lived he had better have a veterinary examine her and see what he could find."

"Farmers of Cedar Rapids

"Department of First American Fire Insurance Company

"Osceola, Iowa, August 3, 1932.

"J. Lindley Coon, Sec'y.,

"Cedar Rapids, Iowa

"Policy No. 80681 Phillip Miller

"Dear Sir: The assured came to my office today and reported a damage to a horse by lightning. He thinks the horse was hurt on July 9th, 1932, and told me it has never been right since that. Dr. H. D. Rosengrant was with him and he had examined the horse and thinks its condition is a result of lightning.

"Awaiting your advice, I am

"Yours truly,

"[Signed] W. S. Barnard."

Nothing further occurred between the parties until October, when the agent of appellant visited appellee's farm and the conversation to which we have heretofore referred took place.

■ I. Appellant contends that, even if the letter of July 13th be construed as the notice which the policy and the statute provide must be given within five days, still the appellee cannot recover because he never furnished the affidavit of loss which both the policy and the statute require must be furnished the insurer within 60 days from the date of the loss. Appellee meets this contention with the claim that such affidavit was waived.

■ The court, in its instruction No. 7, told the jury, in substance, that plaintiff claimed that he had mailed a letter within five days of the damage, and that on August 3d he mailed a second letter

advising the defendant of his damage "with offers to furnish additional and further proof"; that defendant kept said letters and offer without reply until late in October, when its adjuster visited plaintiff and agreed to pay the damage; that, if it found that the plaintiff did mail the letters as alleged, and did, within sixty days, inform the defendant as to all the facts so far as known as to the cause of the damage to the horse, then the defendant might waive the filing of further and additional proofs of loss; and that, if the defendant "did by its acts and conduct waive the filing of the proof of loss than was furnished by the plaintiff", the defense of failure to furnish proof of loss within sixty days would fail.

Appellant complains of this instruction because it wrongfully told the jury that the letter of August 3d contained "offers to furnish additional and further proof", whereas no such offers were contained in said letter. An examination of said letter seems to us to support this contention of appellant. Appellant further contends that said instruction was erroneous because it submitted to the jury the question of waiver growing out of the letters of the plaintiff to defendant and defendant's silence and failure to answer the same. Appellee, on the other hand, argues that the letters of July 13th and August 3d contained all the facts in regard to the loss which were known to appellee; that these letters were sufficient to apprise the appellant that they contained all such facts; that, if appellant desired further information or proof, it should have notified appellee to that effect; and that, by failing to ask for further proof, the appellant by its conduct waived the furnishing of the affidavit of loss provided for in the policy.

The waiver here claimed is not an express waiver, but one to be implied from the conduct of the appellant, and is based upon the principle of estoppel. As stated in Ervay v. Fire Ass'n. of Phila., 119 Iowa 304, 93 N. W. 290, such waiver arises "when the plaintiff has been misled into thinking that nothing further will be required of him, and has on that account failed to take further steps which he might have taken, then the company cannot take advantage of such failure induced by it, or its authorized agent acting for it, in the matter for the purpose of defeating its liability under the policy."

In all the cases cited by appellee, and in all those to which our attention has been called, there was either some sort of proofs furnished which were defective or something was furnished by the

insured which showed that it contained all the facts within his knowledge and that he was relying on the insurer to inform him if any further proof was required. In this respect we think all such cases differ from the case at bar. The letters of July 13th and August 3d do not purport to be the proof of loss required by the policy, and neither of them contains anything from which the insurance company should have inferred that there were no other facts within the knowledge of the insured, and that he was relying on the insurance company to notify him if any further proof was required. So far as we have been able to discover, in no case where the facts were such as they are in this case has mere silence on the part of the insurer been held to amount to a waiver. As said in Ervay v. Fire Ass'n. of Philadelphia, 119 Iowa 304, 93 N. W. 290: "The failure of the company to respond to communications by plaintiff or his attorneys, and the failure of the adjuster to call upon him as promised, with reference to the claim, ought to have warned him to do everything required by the policy to make his claim effectual, and certainly cannot be said to have justified him in assuming that the loss would be paid without compliance with the conditions." See Kirkman v. Farmers Ins. Co., 90 Iowa 457, 57 N. W. 952, 48 Am. St. Rep. 454; Ervay v. Fire Ass'n. of Philadelphia, 119 Iowa 304, 93 N. W. 290; Ruthven Bros. v. American Fire Ins. Co., 92 Iowa 316, 60 N. W. 663; State Ins. Co. v. Lock, 191 Iowa 1083, 183 N. W. 311; Woodard v. Security Ins. Co., 201 Iowa 378, 207 N. W. 351.

We think there was nothing in the conduct of appellant in connection with the letters sent to it by the appellee that would justify the court in submitting the question of waiver of proofs of loss to the jury. Moreover, both in his petition and in his reply to appellant's answer, the appellee based his claim of waiver upon the conversation had between him and the appellant's adjuster and not upon the appellant's conduct in reference to the letters sent to it, and there is in the record no evidence that the appellee intended the letters written by him, or either of them, to supply the place of the affidavit or proofs of loss required by the policy.

II. In its instruction No. 9 the court told the jury, in substance, that the plaintiff claimed that in October, while there was still a controversy over the plaintiff's proofs and claims for damages, the adjuster agreed to settle and compromise the claim and pay the damages sustained, and that, if they so found, such a

promise and agreement would be a valid and binding agreement, and plaintiff would be entitled to recover. Appellant complains of this instruction and of the submission of the question of waiver of proofs of loss on the ground on which it was therein submitted to the jury. It is undisputed in the evidence that the conversation between the appellee and appellant's adjuster did not occur until some time in October, 1932, more than 60 days after the alleged damage to the horse had happened, and appellant contends that, even if the agreement had been made with appellee by appellant's adjuster, as contended by appellee, this could not constitute a waiver, because it occurred after the time fixed by the statute and terms of the policy within which proofs of loss must be furnished. So far as we can find, this precise question has been before this court in only one case prior to this appeal. In Fairgrave v. Illinois Bankers Life Association, 211 Iowa 329, 233 N.W. 714, a policy of life insurance provided that, if the insured became totally and permanently disabled, one-half of the amount of insurance would be paid on due proof thereof, and the by-laws of the association, which by reference were made a part of the insurance contract, provided that proof of such permanent and total disability must be given within 90 days after the happening of the total and permanent disability. The insured suffered a paralytic stroke on September 9, 1925, and as a result thereof she became mentally incompetent soon thereafter. No proofs of permanent and total disability were furnished the association within 90 days from the commencement of such disability, or at any other time, and the first notice of such disability was in a letter dated July 15, 1927, in which one of the beneficiaries under the policy wrote the insurer asking if she was not entitled to some consideration. A second letter was written to the insurer by the legal guardian of the insured about September, 1927. No other proof of total and permanent disability was received by the insurer, and no demand for blanks upon which to make such proofs was made upon it. Under date of October 18, 1927, the insurance association wrote a letter refusing to honor any claim under said certificate. The insured was still alive at the time that this letter was written. Suit was brought upon the policy, and it was claimed that the letter of the insurance company denying liability would constitute a waiver of the furnishing of proofs of disability. In reversing the case and holding that such denial of

liability could not be held to be a waiver of proofs, this court, speaking through Mr. Justice De Graff, said:

"By so denying liability, can it be said that the association waived its right to refuse payment of the disability benefit because of nonconformance with the express provisions of the contract upon which such disability benefit became payable,—to wit, the furnishing of proofs within 90 days after the commencement? We cannot go that far, and deprive the association of a right which had accrued to it under the laws of this state. However hard and cold-blooded the instant decision may seem, with respect to the terms and provisions of the insurance contract, we are committed to the doctrine that, while the laws of the state of Iowa permit parties to make contracts in plain and unmistakable language, this court may not change that language and read into the contract other terms which were not agreed upon at the time of the making of such contract."

The holding in the above case finds support in the cases of Smith v. American National Insurance Company, 111 Ark. 32, 162 S. W. 772, and Illinois Bankers Life Association v. Byassee, 169 Ark. 230, 275 S. W. 519, 41 A. L. R. 379.

Appellee has cited no case dealing with the precise question here presented. In our opinion, this question is controlled by our holding in the Fairgrave case and the cases therein cited, and the appellee cannot rely upon a waiver arising out of the alleged agreement of the adjusting agent of appellant with appellee, which was made after the time within which the affidavit constituting proofs of loss should have been filed under the terms of the policy.

 III. Error is alleged on the part of the trial court in overruling appellant's objections to the admission of the evidence of appellee, as a witness, to the details of the conversation which occurred between him and Barnard, who was the agent who had solicited the policy, at the time that the letter of July 13, 1932, was written. We think this evidence went beyond mere reference to the subject-matter of the letter, as contended by appellee, and that the appellant's objection should have been sustained. However, we find nothing in such evidence which, to our mind, would be so prejudicial as to warrant a reversal on that account alone.

Similar complaint is made because the trial court overruled appellant's objections to the evidence of the witness, Barnard, as

to the details of such conversation. What we have said above in regard to the testimony of the appellee applies also to the testimony of this witness.

■ IV. Objection is also made to the ruling of the court in allowing the introduction of a carbon copy of the letter claimed by appellee to have been written by Barnard on July 13, 1932. It appears that no request for the production of the original of this letter was made until the witness, Barnard, was called upon to testify, at which time the attorney for appellant stated that he had no notice to produce such a letter, did not have the original of it in his files, and had no knowledge that there was such a letter. After some preliminary questions had been answered, the carbon copy was allowed to be introduced over appellant's objection that no notice had been given to it to produce the original. In thus overruling appellant's objection to the introduction of secondary evidence, we think the trial court was in error. Burlington Lumber Co. v. Whitebreast Coal & Mining Co., 66 Iowa 292, 23 N. W. 674; Carper v. Ridpath, 168 Iowa 22, 149 N. W. 841; Singmaster & Son v. Robinson, 181 Iowa 522, 164 N. W. 776.

■ V. Upon the cross-examination of the witness Barnard the following appears:

"Mr. Shuttleworth: Q. Did you make an examination during the noon hour of your records as to whether or not you had any certificate from the Secretary of State appointing you as an agent to solicit business for the Mutual Fire and Tornado Association? A. I didn't find any certificate, neither did I find I had wrote any business during that period, but I think I still have the agency from the fact that I wrote a man on the installment plan and I was sending his premiums in each year for him and it hadn't expired yet.

"Mr. Shuttleworth: I move to strike all that part of the answer of the witness being the opinion and conclusion and a voluntary statement.

"Mr. Slaymaker: That is part of the answer.

"The Court: Answer may stand. To which ruling of Court the party or parties adversely affected are given an exception."

It is urged that the court erred in overruling the appellant's motion to strike. We think it quite clear that the answer was not responsive to the question asked, and that a motion to strike the

whole answer, if made, would have been good. However, the motion made was to strike that part of the answer which constituted the opinion and conclusion and voluntary statement of the witness. No doubt the motion could have been more explicit. However, an examination of the answer and the motion seems to make it apparent that the motion referred to the statement of the witness, as to what he thought because of the fact that he had written a man on the installment plan. This statement was clearly an opinion and conclusion of the witness, and also a voluntary statement, and, in overruling the defendant's motion to strike that portion of the answer, we think the trial court was in error.

VI. Complaint is made as to the statement of the issues contained in the court's instruction No. 1. In this instruction the court told the jury, among other things, that the plaintiff claimed that about 30 days after the injury to his horse on July 10, 1932, the adjuster of the defendant interviewed the plaintiff in regard to the loss. If this visit of the adjuster had been in August, it would have been within the 60-day period for filing the proof of loss, and the agreement which the adjuster is claimed to have made would have been a waiver of such proof. But, while this claim was made in the petition, there was an entire absence of any evidence to show that the adjuster visited the plaintiff before October. In no other place in the instructions did the court tell the jury that there was no evidence to support this claim of plaintiff's petition, and, in thus stating the claim as contained in the petition without informing the jury that there was no evidence to support it, we think the trial court was in error.

Many other errors are alleged in regard to rulings of the trial court and in regard to instructions given. A consideration of all of these alleged errors would require this opinion to be extended to unnecessary length. We believe that the alleged errors, which have not been discussed, are such as will not occur upon a retrial of the case, and, for that reason, we deem it unnecessary to give them further consideration.

For the reasons stated in the opinion, the judgment appealed from is hereby reversed.—Reversed.

ANDERSON, C. J., and all the Justices concur.