ANDREW WEBER, as guardian of the estate of Fred Bodman, Estelle Bodman, Esther Bodman, Maxine Bodman, and Myron  Bodman, Minors, Respondent, v. INTERSTATE BUSINESS MEN'S ACCIDENT ASSOCIATION, a corporation, of Des Moines, Iowa, Appellant.

(184 N. W. 97.)

**Insurance — by-law as defense must be pleaded and proved.**

1.   The defendant, an Accident Insurance Company, relied on a cer-

tain by-law, to avoid liability on a certain policy of insurance. It neither pleaded nor proved the by-law nor the substance thereof.

It is *held*, that, if such by-law, in any circumstances, might constitute a defense, a prerequisite thereto would require it to be properly pleaded, and its contents established by competent evidence; and that not having been done, the defense in that regard, if any, is not available.

**Insurance — suicide while insane is death by "accidental means."**

2. Where the insured, in an Accident Insurance Policy, commits suicide while so insane as not to comprehend the nature of the act nor the physical result which would flow from it, his death is caused by accidental means within the meaning of the policy insuring against bodily injury from external, violent and accidental means.

Opinion filed July 22, 1921.

Appeal from judgment and order of the District Court of McIntosh county; *Allen,* J.

Order and judgment affirmed.

*G. M. Gannon,* and *R. M. Haines,* of counsel, *A. A. Ludwigs,* for appellant.

The provisions of the contract are not void as being against public policy. Vidal v. Girard's Executors, 2 How. 127; Printing Co. v. Sampson, 19 Eq. 462; Page on Contracts, Vol. 1 p. 503; Interstate B. A. A. v. Atkinson, 165 Ky. 537 and 538. See also Begelow v. Berkshire Life Ins. Co. 93 U. S. 284; 23 L. ed. 918.

The provisions are of different effect and scope than the provisions against "suicide," "Self-destruction" and like acts while insane. Blunt v. Fidelity & Casualty Company, 145 Cal. 268; 67 L. R. A. 793, Manhattan Life Ins. Co. v. Beard, 112 Ky. 455.

In this case the insured shot his wife and then shot himself producing instant death. It was alleged in the petition that the shooting "sprang from an insane impulse of a disordered and unsound mind. The evidence clearly established insanity of more than three years standing and the trial court directed a verdict for the defendant. On appeal the judgment was affirmed. Layton v. Interstate Business Men's Accident Ass'n. 158 Ia. 356; 139 N. W. 463.

*I. A. Mackoff, Curtis & Remington,* and *E. T. Burke,* for respondent.

Words and phrases, Vol. 1, p. 70.

"Where the insured killed himself while insane, and not conscious of what he was doing, such act was not suicide within the meaning of the policy and a recovery could be had on the policy."   Blackstone   v. Life Ins. Co. 42 N. W. 156; Crandall v. Accident Ins. Co. 33 U. S. 236; 30 Law ed. 740; Rodel v. Life Ins. Co. (U.S.) 24 Law ed. 433.

"Where defendant relies upon rules and by-laws of the association they must be set out in the answer, and it is not sufficient to allege merely that they have been violated." 1 Cyc. 288; 1 Corpus Juris 494; Gray v. National Benefit Association. (Ind.) 11 N. E. 477; Stevens v. Cont. Ins. Co. 12 N. Dak. 463.

"A stipulation is a judicial admission, and is absolutely conclusive upon the parties agreeing to it, prohibiting any further dispute of the fact admitted or waived, and any use of evidence to disprove or contradict it, or inconsistent with it.   12 Enc. of Ev. p. 100 and many cases cited.

"When admissions of this character are formally made for the purpose of waiving certain proofs or rules of practice, they are conclusive upon the client and *cannot be withdrawn.*"  Jones on Ev. p. 324; Greenleaf on Ev. ¶ 339; Wigmore on Ev. Vol. 4, ¶ 2588-2592

GRACE, J. This appeal is from a judgment in plaintiff's favor   for $5,000, with interest and costs, and from an order denying defendant's motion for a new trial.

The action is brought by plaintiff as guardian of the estate of   the minor children of Fred J. Bodman, deceased, to recover on what purports to be a certain accident insurance policy in the sum of $5,000 issued by the defendant to Fred J. Bodman in his lifetime.

The insurance is against injury or death by violent, external, and accidental means. On December 11, 1913, defendant issued its policy to the insured.  It would appear from the testimony, that this policy (Exhibit A) may not have been the one in force at the time death occurred. There is some evidence to indicate that it lapsed; that the insured applied for reinstatement, and requested a duplicate of the policy, claiming that he was unable to find the old one.

A discussion of this point is not very material, as will appear from the following stipulation:

"(1) That Fred Bodman, Estelle Bodman, Esther Bodman,   Maxine Bodman, and Myron Bodman are the infant children of Fred J. Bodman,

deceased, and that Andrew Weber, the plaintiff in this action, is the duly appointed, qualified, and acting guardian of their estates.

"(2) That the defendant, the Interstate Business Men's Accident Association of Des Moines, Iowa, is a corporation engaged in the business of insurance against accident, and that during the lifetime of Fred J. Bodman the defendant issued a policy, in which policy it insured the said Fred J. Bodman against injury or death by violent, external, and accidental means, and that said policy was fully paid up and in full force and effect on the 12th day of May, 1919.

"(3) That the wards of the plaintiff, hereinbefore named, are the beneficiaries named in the said policy, and are entitled to the full benefit of all of the benefits thereof.

"(4) That the amount payable under the terms of the said policy in case of accidental death of the said Fred J. Bodman is the sum of $5,000.

"(5) That no part of the same has been paid to the wards of the plaintiff nor to any one authorized to receive the same in their behalf."

The plaintiff claims that on the 12th day of May, 1919, insured came to his death by external, violent, and accidental means, to wit, by the wheels of a railroad coach running over his neck.

The complaint states a cause of action for recovery on the policy. In substance, the answer admits the issuance and delivery of the policy, the payment of the premiums, and that the policy was in full force and effect at the time of the death; and, after denying the allegations not admitted, it alleges that the death of Bodman was not caused by external, violent, and accidental means, but was caused by the willful and premeditated self-destruction of the deceased, with suicidal intent, and was due wholly to his own acts, and not to the acts of any other person or agency.

The only issue presented by the pleadings is whether the death of the insured was due to an act of suicide committed while he was sane. The answer does not allege that he was sane. It states, however, that the act of self-destruction was willful and premeditated. If it were premeditated, it would tend to denote sanity, and to some degree the word means deliberation. If there is any other issue in the case—and we do not think there is—it arose from the introduction in evidence of what purports to be a portion of the by-laws of the defendant association which, so far as material here, is as follows:

"*Limitation of Risk.*—The accident department of the association does not assume any liability for accidental injury sustained * * * if the

occasion of the accident be disease, bodily or mental infirmity, *insanity,"* etc.

The defendant introduced Exhibit A in evidence (a synopsis of the by-law being on the back thereof), it would appear, for the sole purpose of establishing proof of this particular by-law. The defendant did not plead the by-law, and, we think, in order to adduce proof of it, it should have been pleaded either in the original pleading or by an amendment thereof, or, in any event, even though improperly received in evidence, by reason of not being pleaded, if it were to be given any consideration as evidence, the defendant at least should have made a motion to amend the pleadings to correspond with the proof. No amendment nor any such motion was made, and from this it would appear that the by-law should not have been received nor admitted as evidence, and we so determine. It must follow, in these circumstances, that the alleged by-law is no defense, and does not prevent a recovery on the policy.   1 Cyc. 288; 1 C. J. 494; Gray v. National Benefit Ass'n, 111 Ind. 531, 11 N. E. 477; Stevens v. Cont. Ins. Co., 12 N. D. 463, 97 N. W. 862; Ennis v. Retail Merchants' Ass'n, Mutual Fire Ins., 33 N. D. 21, 156 N. W. 234.

On the back of the policy is the following:

"The following is a synopsis of the provisions of the articles of incorporation and by-laws now in force and effect: The right of any member to claim benefits or indemnity will be determined by the provisions of the articles of incorporation and the by-laws in force at the time the accident happens, out of which any claim arises."

Assuming for the present that under the laws of this state the by-laws of the defendant could be proved as a part of its contract or policy of insurance—a subject which will be treated later in the opinion—it is clear that the identical by-law or by-laws relied on in force at the time of the happening of the accident out of which the claim arises should be pleaded. To plead a synopsis or abbreviation of it would not be sufficient, for those relying on its terms, to limit liability, might omit an important part of it, or might omit a part which to them might seem immaterial, and yet which might have an important bearing on their liability.

It must also appear by the pleadings that the by-law is the one in effect at the time the accident occurs. The synopsis of the by-law above set forth, and contained in Exhibit A, if it were ever a by-law, was perhaps in force on the 11th day of December, 1913, the date of the policy. But the by-laws of the company are subject to change from time to time, and those

which are in force at the time of the accident are the ones only which are operative.

It was approximately six years from the date of Exhibit A until the accident. The above by-law may have been entirely changed or eliminated, or another of entirely different meaning and phraseology enacted since that time, which in that event would be the one in effect at the time of the accident. In that case the above by-law would be of no force nor effect. So that it would appear that it was incumbent on the defendant, not only to plead the above by-law in full, but, as well, to adduce competent evidence to show that it was in full force and effect at the time of the accident. There was no foundation laid for any such proof, and no competent evidence of the actual, complete by-laws, if any, in force at the time of the accident.

The general rule is that, if the defendant desired to assert nonliability on the policy by reason of the protection afforded it by certain by-laws or provisos or conditions which are claimed to be a part of the policy, or referred to and claimed to be made a part of it, they should be fully pleaded and established by competent evidence.

A pleading of the synopsis is not sufficient, nor are the conclusions of the pleader, as drawn from and based on the by-law, proviso, etc. It would appear that the admission in evidence of the synopsis of the by-law above mentioned was not evidence of a by-law in force at the time of the accident.

Furthermore, if the by-law were properly pleaded and proved, it still would not be effective to avoid liability on the policy, as it is contrary to the specific provisions of § 6638, C. L. 1913, which, so far as material here, is as follows:

"No policy of insurance against loss or damage by the sickness, bodily injury or death by accident of the assured shall be issued or delivered in this state if it contain any of the following provisions."

Subdivision 2: "A provision referring to the constitution, by-laws or rules of the company or association or attempting to make the same a part of the policy."

The other subdivisions of the section need not be here considered.

It is clear from the above section that the by-law could not become a part of the policy. Such a provision, if inserted in it or attached to it, is absolutely void and of no effect. Evidence of it should not have been received, and it could not be pleaded nor in any manner used as a de-

fense. The by-law being prohibited by law from becoming a part of the policy, it is for that reason void, and for the same reason is void as being against public policy.

The Legislature, in enacting the above law, intended, no doubt, to prohibit accident insurance companies from adding subsequent provisos or conditions to a policy, through the medium of by-laws the enactment and terms of which were consented to in a way by the insured at the time of the issuance of the policy. No doubt the Legislature was aware that this practice had been resorted to to such a degree that it in effect destroyed the consideration for the payment of the premium. In other words, the Legislature, no doubt, was aware of a practice among insurance companies writing the class of insurance specified in the section above mentioned, whereby subsequent to the date of issue of the policy it was practically made worthless to the insured by the incorporation therein of new provisos and conditions through subsequently enacted by-laws made a part of the policy by which they were largely relieved of liability. In other words, they greatly decreased the risk, and thus made the policy largely worthless to the insured or the beneficiary, or, perhaps, the Legislature acquired knowledge that such insurance companies were making immense profits by these various practices, now prohibited by the law, which, when permitted, assisted the company to avoid a large portion of its risks. Whatever may have been the cause which moved the Legislature to enact the law, it has done so, and its act in that regard would seem to be one of wisdom, founded on a sound public policy, and intended to protect the insured against impositions, which are prohibited by the law.

Whether the contract is an Iowa contract is not a matter pleaded nor proved. That should have been done if defendant desired to avail itself of any benefit or advantage in that regard. Having failed to do so, it waived them. In the absence of pleading and proof to the contrary, it should be deemed a North Dakota contract, and the laws of this state are applicable to it in determining its legal effect.

It is not necessary here to determine what application the above section would have if the contract had been properly asserted and proved to be an Iowa contract. That question is not in this case, and needs no further consideration. It is proper here to consider the only defense interposed, which is to the effect that the insured came to his death by willful and premeditated self-destruction with suicidal intent. We are clearly of the opinion that this defense must fail for want of proof. The evidence

clearly tends to show that the insured took his life while not in the posses-
sion of his mental faculties, and when they were disordered, and thus his
mind was unsound and not in a condition to reason; in other words, he
was then violently insane.

Further proof of insanity is afforded by the physical facts, for it
would appear to a reasonable mind that no person possessed of any
reason, or, in other words, unless wholly insane, could terminate his own
life in such a cruel, inhuman, and fiendish manner. The testimony shows
that the body was found on one side of one of the·rails of the railroad,
and the head on the other side of it, indicating that,if he committed
suicide, he placed his body in such position on the rail that the wheels
of one of the trucks of a car, which was part of a moving train, would
pass over his neck, and thus sever the head from the body, which was vir-
tually what happened. It may also be noted that the defendant, in at-
tempting to prove the by-law, in effect conceded the insanity.

We are of the opinion that the evidence is in such state as to show
that the insured at the time he destroyed his own life was so insane as
not to comprehend the nature of the act or of the physical result which
would flow from it, and for this reason his suicide was caused by acci-
dental means within the meaning of this policy, insuring against bodily in-
juries from external, violent, and accidental means. Tuttle v. Iowa State
Traveling Men's Association, 132 Iowa, 652, 104 N. W. 1131, 7 L. R. A.
(N. S.) 223; Accident Ins. Co. v. Crandal, 120 U. S. 527, 7 Sup. Ct. 685,
30 L. ed. 740; Blackstone v. Standard Life Accident Ins. Co., 74 Mich.
592; 42 N. W. 156, 3 L. R. A. 486; Grand Lodge, I. O. M. A., v. Wieting,
168 Ill. 408, 48 N. E. 59, 61 Am. St. Rep. 123.

Here we will consider another important feature of this case. Dr.
C. A. Campbell, a duly licensed and practicing physician of Ashley, N. D.,
the village where the accident happened, testified as a witness on behalf of
plaintiff. The evidence shows he examined the dead body of Fred J.
Bodman. In addition to other testimony, he stated that the jaw was
broken, and that there were several contusions and bruises on one side
of the face; that the angle of the right lower jaw was broken. His
further testimony, in the form of questions and answers, is as follows:

"Q. From the position that you saw the head, and from its location
adjacent to the rail, what would you say caused the fracture of the jaw?
A. I couldn't say, except that the jaw had been hit.

"Q. Might not that have happened by the pressing down of the

wheel upon the neck and pressing the head and jawbone into the cinders and track?  A.  That wouldn't be the easiest way of explaining it.

"Q. How would you explain that?  A.  I should fancy that he was struck first by some projecting iron or thing.

"Q. You mean to say that from the position of that body that he might have been struck by something besides the car wheel?  A.  Yes, sir.

"Q. There is nothing that I can think of on a car that would hit him there, and at the same time cut off his head and break the jaw.  Do you think that that blow to the jaw might have taken place and broken the jaw before the head was cut off?  A.  It might have been.

"Q. Was that a serious event, that breaking of the jaw?  A.  If the person were alive; yes.

"Q. From the position of the body you would not think that that injury to the jaw resulted from any other cause than the passing of the wheel over the neck, would you?  A.  The break of the jaw was not caused by the severing of the neck, something hit him."

Dr. Campbell was a disinterested witness.  His evidence, above set forth, is of a substantial character, and sufficient to show that in some unaccountable and unknown manner the insured was struck by something besides the car wheel; and the jury, from the evidence above set forth, could draw the conclusion that, from being struck on the jaw with such force as to break it, he was thereby thrown on the rail and further injured, as the evidence shows.  In other words, the testimony of Dr. Campbell in this regard is substantial in character and sufficient to sustain the verdict of the jury.

It will also be noticed that nowhere does the defendant claim that the evidence is insufficient to sustain the verdict. But, if the defendant had assigned as a cause for reversal of the judgment the insufficiency of the evidence to sustain the verdict, the general rule is well settled on an appeal from a judgment entered on a verdict that, if there is any substantial evidence to sustain the verdict, the judgment should be affirmed. That rule is applicable here, and, applied, the evidence of Dr. Campbell is sufficient to sustain the verdict.

There is error assigned by reason of the court having given a certain instruction, and particular stress is placed on the following part of it:

"If you find that he was impelled to an act of self-destruction by an insane impulse which the reason that was left in him did not enable him to resist, or if his reasoning powers were so far overcome by his mental con-

dition that he could not exercise his reasoning faculties on the act which he was about to do, the company is liable."

Other extracts from the instruction are as follows:

"I instruct you further, gentlemen, in connection with this matter, that the only defense that the defendant has interposed to the demand of the plaintiff is that the death of Mr. Bodman, while admitted, was not accidental, but was self-inflicted, and was what is ordinarily termed suicide. In this connection, you are instructed that, if you find that the deceased, Fred J. Bodman, did place himself upon the rail where the wheels of the train were about to pass, you must determine whether or not he was insane or sane at the time. If you do find that he placed himself in the way of the train and he was a sane man at that time, then the death was not accidental, and under those circumstances your verdict should be for the defendant. If, however, you find that he did place himself in the way of the train, but he was at that time insane, and that his act was the mad act of a man bereft of his reason, then the death was an accident, and you should find for the plaintiff and against the defendant.

"In other words, self-destruction of a sane man knowingly and deliberately making way with himself is not an accident, but the self-destruction of a man whose mind is deranged and whose reason is gone, when the self-destruction results from such insanity, is accidental.

"I instruct you further, gentlemen, that it is not every kind or degree of insanity which will so far excuse the party taking his own life as to make the company insuring him liable. To do that the act of self-destruction must have been caused by insanity, and the mind of the deceased must have been so far deranged as to make him incapable of using rational judgment in regard to the act which he was committing."

The instruction is too lengthy to set out in full, but sufficient has been above set forth to demonstrate that it was quite comprehensive. We think, as a whole, it fully and fairly states the law applicable to the issues involved in the case. It is therefore clear to our minds that there was no reversible error in giving the instruction, nor was there reversible error in refusing to give the instruction requested by the defendant, the contents of which is as follows:

"The jury are instructed that by the terms of the insurance contract upon which this action is based, and which is in evidence before you, it is provided, among other things, that the defendant insurance company does not assume any liability for death resulting from accident occasioned by

mental infirmity or insanity; and I instruct you that, this being a part of the insurance contract, it is binding upon the parties thereto, and that therefore in this case, if you should find that the deceased, Fred Bodman, came to his death by his own act of self-destruction, even if you should also find that his act in taking his own life was due to disease or mental or bodily infirmity or insanity or fits, yet there could be no recovery in this case by plaintiff, and that because of the terms of the insurance contract above mentioned .

"I instruct you, gentlemen of the jury, that there is just one question for you to determine in this action, and that is: Did the deceased, Fred Bodman, come to his death from an act of self-destruction, or, in other words, did he commit suicide? If you should find that he did not commit suicide, then your verdict should be for the plaintiff; but, on the other hand. if you should find from the evidence that he did commit suicide, then the plaintiff cannot recover, and your verdict must be for the defendant."

The court, in its general instruction, did submit to the jury the question of whether the insured committed suicide while sane, and gave full instructions covering that question. The court properly refused to give the remainder of the instruction for the reason that the defendant did not, and, further, could not, plead and prove as a defense that the act of suicide was committed while the insured was insane.

We have above analyzed these questions quite fully, and have shown that such a condition, contained in a by-law, would be contrary to the laws of this state. In short, by-laws, in this class of insurance, cannot in this state be interposed as a defense to a liability on the policy, if they are against the law, and hence against public policy. They cannot be made a part of the policy by a provision referring to the constitution, by-laws, or rules of the company attempting to make the same a part of the policy.

The instruction requested was contrary to the law above mentioned, and hence the court did not err in refusing to give it. The instruction requested also related to issues not formed by the pleadings, and was properly denied.

The verdict is not contrary to the evidence, and there was no error in the court denying defendant's motion for a new trial.

The order and judgment of the court appealed from are affirmed.

Respondent is entitled to his statutory costs and disbursements on appeal.

CHRISTIANSON, J. (concurring specially). This is an action upon an accident insurance contract. The complaint alleges:

"(1) That he (Weber) is the duly appointed, qualified, and acting guardian of the estates of Fred Bodman, Estelle Bodman, Esther Bodman, Maxine Bodman and Myron Bodman, who are the infant children of Fred J. Bodman, deceased.

"(2) That during the lifetime of the said Fred J. Bodman he was the holder of a policy issued by the defendant which is an accident insurance corporation, in which said policy the said defendant did insure the said Fred J. Bodman against injury or death by violent, external, and accidental means, and that said policy was fully paid up and in full force and effect upon the 12th day of May, 1919.

"(3) That the wards of the plaintiff hereinbefore named are the beneficiaries named in the said policy, and are entitled to the full benefit of all the provisions thereof.

"(4) That on the said 12th day of May, 1919, the said Fred J. Bodman came to his death by external, violent, and accidental means, to wit, by being run over and decapitated by a railroad train. ·

"(5) That the amount payable under the terms of the said policy in case of accidental death of the said Fred J. Bodman is the sum of $5,000.

"(6) That no part of the same has been paid to the wards of plaintiffs, nor to any one authorized to receive the same in their behalf."

The defendant in its answer admitted the allegations of paragraphs 1, 2, 3, 5, and 6 of the complaint  The answer also contained the following allegation:

"Further answering, it alleges that the death of the said Fred J. Bodman was not caused by external, violent, and accidental means, but was caused by the willful and premeditated self-destruction of the said deceased with suicidal intent and was due wholly to his own acts, and not to the acts of any other person or agency."

The action was tried to a jury upon the issues framed by these pleadings. The jury returned a verdict in favor of the plaintiff. The defendant moved for a new trial on the grounds: That the verdict is contrary to the evidence; that the verdict is contrary to the court's instructions; that the court erred in giving, and in refusing to give, certain instructions to the jury. The motion for a new trial was denied, and the

defendant has appealed to this court from the judgment and from the order denying a new trial. While the defendant specified, in the language of the statute, as grounds for a new trial, that the verdict was contrary to the evidence and contrary to the court's instructions, these grounds were apparently abandoned, and the only question presented on this appeal is whether the trial court erred in giving and in refusing to give certain instructions. The instructions given and refused upon which error is predicated relate to the question whether the deceased was sane or insane at the time of his death. The trial court instructed the jury thus:

"If you find that he was impelled to the act of self-destruction by an insane impulse which the reason that was left in him did not enable him to resist, or if his reasoning powers were so far overcome by his mental condition that he could not exercise his reasoning faculties on the act which he was about to do, the company is liable."

The defendant requested that the jury be instructed that by the terms of the insurance contract—

"The defendant insurance company does not assume any liability for death resulting from accident occasioned by mental infirmity or insanity, * * * and that therefore in this case, if you should find that the deceased, Fred Bodman, came to his death by his own act of self-destruction, even if you should also find that his act in taking his own life was due to disease or mental or bodily infirmity or insanity or fits, yet there could be no recovery in this case by the plaintiff, and that because of the terms of the insurance contract."

The trial court refused to give this instruction.

It will be noted that the requested instruction refers to, and purports to be based upon, certain provisions of the insurance contract involved in this suit. The defendant does not challenge the correctness of the rule announced in the instruction given by the trial court, considered as an abstract proposition. On the contrary, it admits on this appeal that the authorities sustain the rule that death from suicide is caused by accidental means within the meaning of a policy of insurance against bodily injuries from "external, violent, and accidental means," if the insured was at the time of the act so insane that he did not understand the nature of the act or that death would result therefrom. But appellant contends that this rule is not applicable in this case for the reason that the policy here involved contained a provision that "the accident department of the asso-

ciation does not assume any liability * * * if the occasion of the accident be * * * insanity." Hence, in considering appellant's specifications of error, the first pertinent question to determine is whether its premise is correct, viz. whether the insurance contract in suit contains the provision defendant asserts that it contains..

It will be noted that the complaint did not purport to set out the policy or the terms and conditions thereof. The complaint merely averred that the deceased was the holder of an accident policy issued by the defendant whereby he was insured "against injury or death by violent, external, and accidental means." The only issue tendered by the answer was as to the character of the death. The answer alleged affirmatively "that the death was not caused by external, violent, and accidental means, but was caused by the willful and premeditated self-destruction of the said deceased with suicidal intent and was due wholly to his own acts and not to the acts of any other person or agency." There was not even an intimation in the answer that the policy contained a provision relieving the defendant from liability from accidents occasioned by insanity. But the defendant contends that, regardless of the issues framed by the pleadings, the defendant became entitled to the benefit of the provision in the policy and to have appropriate instructions given as regards thereto by reason of the evidence admitted upon the trial of the case.

Let us see how well this contention is founded. At the commencement of the trial the parties entered into the following stipulation:

"It is stipulated by and between the plaintiff and the defendant that the following facts are conceded by both sides upon the trial of this action.

"I. That Fred Bodman, Estelle Bodman, Esther Bodman, Maxine Bodman, and Myron Bodman are the infant children of Fred J. Bodman, deceased, and that Andrew Weber, the plaintiff in this action, is the duly appointed, qualified and acting guardian of their estates.

"II. That the defendant, the Interstate Business Men's Accident Asso ciation of Des Moines, Iowa, is a corporation engaged in the business of insurance against accident, and that during the lifetime of Fred J. Bodman the defendant issued a policy, in which policy it insured the said Fred J. Bodman against injury or death by violent, external, and accidental means, and that said policy was fully paid up and in full force and effect on the 12th day of May 1919.

"III. That the wards of the plaintiff, hereinbefore named, are the

beneficiaries named in the said policy, and are entitled to the full benefit of all of the benefits thereof.

"IV. That the amount payable under the terms of the said policy in case of accidental death of the said Fred J. Bodman is the sum of $5,000.

"V. That no part of the same has been paid to the wards of the plaintiff, nor to any one authorized to receive the same in their behalf."

In presenting his case in chief the plaintiff, in addition to the foregoing stipulation, offered the testimony of only one witness, who testified to the fact that the insured, Fred Bodman, came to his death on May 12, 1919, by being run over by a railroad train at Ashley in this state. No reference was made to the mental condition of the deceased. The first evidence adduced by the defendant consisted of certain testimony tending to lay a foundation for the introduction in evidence of the policy of insurance. The policy sought to be and eventually admitted in evidence did not purport to be the original one issued to the deceased, but purported to be merely a copy. Defendant's counsel spent much time and adduced considerable testimony for the purpose of laying a foundation for the admission of the copy in lieu of the original, and there was and is the gravest doubt if in fact a sufficient foundation was laid to justify the admission of the copy. At all events the question which must have been uppermost in the mind of the trial judge at the time was whether a sufficient foundation had been laid to admit the proffered exhibit at all. The face of the policy received in evidence was as follows:

"Number 66707.                                    Not Exceeding $5,000.00.

"Certificate of Membership.

"Interstate Business Men's Accident Association of Des Moines, Iowa.

"This certifies that Fred J. Bodman is a member of the Interstate Business Men's Accident Association, and is entitled to such benefits as may be provided in and by the articles of incorporation and by-laws of said association in force and effect at the time the accident occurs from which a claim for benefits arises, and by the acceptance of this certificate he agrees to the several provisions and conditions of the said articles of incorporation and by-laws as from time to time they may be amended or changed.

"In witness whereof the said Interstate Business Men's Accident Association at its home office in Des Moines, Iowa, has caused this certificate

to be signed by its president and secretary, and its corporate seal to be hereunto affixed this 11th day of December, A. D. 1913.

"Ernest M. Brown,
"Secy. & Treas.
"G. S. Gilbertson,
"President.

"C. P. W. Registered."

On the back of the certificate is the following heading in large type, viz.:

"The following is a synopsis of the provisions of the articles of incorporation and by-laws now in force and effect. The right of any member to claim benefits or indemnity will be determined by the provisions of the articles of incorporation and the by-laws in force at the time the accident happens out of which any claim arises."

Immediately following this heading is what purports to be a synopsis of the provisions of the articles of incorporation and by-laws in force at the time the certificate was issued. Among other things stated therein is the following:

"The accident department of the association does not assume any liability * * * if the occasion of the accident be * * * insanity."

Immediately following the synopsis of the articles of incorporation and by-laws, at the bottom of the page, is the following, also, printed in large type:

"A printed copy of the articles of incorporation and of the by-laws is inclosed with this certificate. The member should read the same carefully and inform himself of the rights and duties of membership. This duty you owe to yourself and the association."

The certificate of insurance also contains a copy of the application. The original application was also offered in evidence. In the application no reference is made to the fact that the association is not liable "if the occasion of the accident be * * * suicide." In fact, no reference is made to the question of limitation of liability. The application, however, contains this declaration on the part of the applicant:

"I hereby agree that I will accept the certificate of membership which may be issued to me subject to all the provisions, conditions, and limitations contained in the articles of incorporation and by-laws of said association, as the same now are or as they may be legally amended or changed, and I agree to comply with all the provisions thereof."

It will be noted that the certificate of membership states that the assured—

"is entitled to such benefits as may be provided in and by the articles of incorporation and by-laws of said association in force and effect at the time the accident occurs from which a claim for benefits arises."

These statements speak for themselves. The certificate of membership by its express terms did not purport to be the whole contract. It specifically referred to the articles of incorporation and the by-laws as establishing the essential elements of the contract. When the contest was raging, during the trial of the cause, as to whether the certificate should be admitted, the trial judge by a mere inspection of the certificate was advised that the benefits conferred upon the assured were those provided in the articles of incorporation and by-laws of the association in effect at the time the accident occurred. This necessarily inferred that whatever limitations there were as to liability were also specified in such articles and by-laws. It was necessary that the certificate of membership be introduced as a foundation for the admission of the articles of incorporation and by-laws. But there is no good reason why the trial court should have believed that the defendant, when it offered the certificate in evidence also, thereby sought to prove the contents of the articles of incorporation and by-laws. Manifestly the articles of incorporation must have been a matter of public record in the state where the association was incorporated; and it is a matter of common knowledge that the by-laws of a corporation are generally entered in some appropriate record of the corporation. Not only is it presumed that the ordinary course of business has been followed, but the very "synopsis" which defendant asserts constitutes evidence of the articles of incorporation and by-laws shows that it is not a copy thereof, but is merely a statement of conclusions as to the contents and effect of the articles and by-laws. It also shows that the articles of incorporation and by-laws are not contained in or in any manner made part of the certificate of insurance, but are extraneous thereto and were set forth in some other document inclosed therewith. It was deemed necessary to conclude the so-called "synopsis" by stating in large type that "the member should read the inclosed copy of the articles of incorporation and of the by-laws carefully and inform himself of the rights and duties of membership" in the association. This was urged upon him as a duty which he owed to himself and to the association. Of course, if the "synopsis" had been a copy or even a complete statement of

the contents of the articles of incorporation and of the by-laws, this statement and caution would hardly have been necessary.

In the circumstances, how can it be said that the trial court erred in not considering the articles of incorporation and the by-laws of the defendant corporation in the instructions to the jury? How can it be said that the trial court in admitting the certificate of insurance must, for the purposes of the submission of the case to the jury, be deemed to have admitted the certificate, among others, for the purpose of proving the articles of incorporation and the by-laws? There is nothing obscure about the rules of evidence relating to the mode of proving the contents of the articles of incorporation and the by-laws of a corporation. Aside from the applicable statutory provisions, the various legal treatises deal fully with the subject. See 3 Ency. Evidence, 657; Jones' Commentaries on Evidence. §§ 200a, 522; Bacon, Life & Accident Insurance (4th ed.) § 103; Fletcher's Ency. of Corporations, § 488. See, also, §§ 7909, 7919, subd. 7, C. L. 1913.

In the case at bar the defendant was permitted to introduce the certificate of insurance in evidence. This constituted an essential foundation for the introduction of proof as to the contents of the articles of incorporation and of the by-laws. Whether defendant had or desired to present such proof was a matter for it to determine. It failed to present such proof. As the trial court said in a memorandum opinion filed with the order denying a new trial in this case:

"As the matter now stands, there is no proof of the existence or contents of the by-laws."

This, in my opinion, correctly states the condition as it existed at the time when the trial court instructed the jury; and, of course, the instructions given were properly limited to the issues raised by the pleadings and the proof. As already stated under the pleadings, only one issue was preserved, namely, whether the death of the insured was occasioned by accidental means, or whether such death was occasioned by "the willful and premeditated self-destruction of the said deceased with suicidal intent." Upon this issue the court had before it the policy of insurance, which specifically referred to the articles of incorporation and the by-laws of the corporation for the other elements of the contract. No attempt was made to prove the contents of such articles or by-laws. There was, however, not only the admission in the defendant's answer, but the stipulation made at the commencement of the trial that "during the lifetime of Fred

J. Bodman, the defendant issued a policy in which policy it insured the said Fred J. Bodman against injury or death by violent, external, and accidental means." So, leaving wholly on one side the question of the sufficiency of defendant's pleading to raise the issue of its limited liability, it seems clear to me that the trial court committed no error in giving the instruction which it gave and in refusing to give the instruction which defendant requested. The instruction which it gave is concededly correct in the absence of evidence on the part of the defendant showing that its liability was limited by virtue of provisions in its articles of incorporation or by-laws. The instruction which defendant requested purported to be based upon, and asked that there be submitted to the jury for consideration, provisions of the by-laws of the defendant corporation which were not in evidence. In other words, the trial court did what the law required it to do—instructed upon the issues which were properly raised by the pleadings and the proof, and refused to instruct with respect to matters for which there was no basis either in the pleadings or in the proof.

I concur in an affirmance of the judgment and the order appealed from. My reasons for doing so are those set forth above. I express no opinion upon any question except those discussed by me in this opinion.

BRONSON and BIRDZELL, JJ., concur.

ROBINSON, C. J. I dissent. In this case there has not been a fair trial on the merits. There is a question as to whether or not the insurance policy is in evidence. The pleadings are dead wrong. There should be a new trial on amended pleadings and a judgment based on real facts, and not on finespun theories. This court should see that the legal procedure is not made a game of skill and chance, and that a decision for $5,000 does not turn on the skill or adroitness of counsel in the making of stipulations or in anything they may do or leave undone.