13783

GIBSON v. RELIANCE LIFE INSURANCE CO. OF
PITTSBURGH, PA.

(172 S. E., 772)

Before STOLL, J., Marlboro, October, 1932.

*Messrs. Edward L. Craig* and *J. K. Owens,* for appellant,

*Messrs. N. W. Edens, Tison & Miller* and *George W. Freeman, Jr.,* for respondent,

February 16, 1934.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The facts out of which this action arose are as follows: On July 14, 1931, the defendant company insured the life of one J. P. Gibson, in the sum of $500.00. The policy provided that the insurance, at the death of the policyholder, be paid to his mother, Mrs. Margaret L. Gibson, and contained the following clause: "Self destruction during the first policy year, whether the insured be sane or insane, is a risk not assumed by the company, but in such case the company will return in full all premiums actually received."

Gibson died on June 9, 1932; and thereafter, in compliance with the terms of the policy proof of his death was furnished the company, which refused to pay the insurance, but offered to return the premiums already paid. The beneficiary refused to accept the tendered premiums, and brought this action alleging that the company was indebted to her in

the sum of $500.00, with interest from August 23, 1932. The answer admitted the issuance of the policy and the payment of the premiums, but alleged that the insured came to his death as the result of self-destruction during the first policy year, and that therefore the insurer's liability was terminated when it tendered the plaintiff the premiums paid. The case was tried in April, 1933, before Judge Stoll and a jury. When all the evidence was in, the defendant made a motion for a directed verdict on the following ground: "That the testimony shows that the policy-holder, Mr. J. P. Gibson, shot himself during the first policy-year; and that the defendant has returned the premium paid, by depositing the same with the Clerk of Court." The trial Judge overruled the motion and submitted the case to the jury, who found for the plaintiff. The defendant excepts and brings error.

■ Counsel for appellant contends that Judge Stoll committed error in refusing to direct a verdict, for the reason that it is conclusively shown by the evidence that the insured committed suicide.

A young man by the name of Olin W. Tallon was the only person with Gibson when he received the wound from which he later died. Tallon testified that he and Gibson left Dillon, S. C., about midnight in an automobile, Gibson driving; that they got on the wrong road and went to Laurinburg, N. C., where they arrived about 5 o'clock next morning; that both of them had been drinking all night and that Gibson was drunk; that at Laurinburg they purchased some gasoline and immediately started for Bennettsville, S. C., the home of both parties; that after they had gone a short distance, the witness, who was then driving, stopped the car at the request of Gibson, who got out, took another drink, and then fired his pistol one time "up in the air"; that Gibson then got back into the car and slumped down on the seat, and the witness, thinking he was asleep, tried to take the pistol but could not do so; that shortly thereafter, while the witness was driving toward home at about forty miles

an hour, Gibson, after firing two shots out of the door and two through the top of the car, shot himself through the head; that at the time Tallon was looking out of the window to the left, and that the bullet passed through Gibson's head and struck the witness a glancing blow on the right jaw; and that he then drove on to McColl where an ambulance was secured and the wounded man was taken to the hospital.

Dr. Kinney, a witness for the defendant, said that he saw Gibson within two hours after his death; that the bullet entered his head above the lobe of his right ear and came out higher up above the left ear; that on the same day he treated Tallon, who had on the side of his neck what appeared to be a scratch, the skin being broken; that the witness did not know what did it, but "it was something like a rough jagged scratched place on the side of his neck."

Dr. J. C. Moore testified that Tallon, whom he saw on the morning of June 9, showed him a place on the right side of his face, which "looked like a scratch-wound to me. I don't think it could have been done with a bullet," as a bullet wound appears "more or less seared and entrenched"; that the scratch on Tallon's jaw could have been caused by the hammer of the pistol, or by any other sharp instrument. Lamar Smith stated that he assisted Gibson and Tallon in getting the gasoline at Laurinburg, and that Gibson was in his usually jolly mood, and that witness never saw him in better spirits. H. C. Smith testified that on June 9, 1932, he was living about a mile and a half from Laurinburg on the road to McColl; that on the morning of that day a car, headed toward McColl, stopped on the side of the road near his house, and two men got out on the left side; that in a little while a pistol fired, and immediately thereafter the two men had a scuffle over something, but that he could not tell what it was; and that finally the tall man (Tallon) carried the short one (Gibson) around and put him in the car and drove away. Burdette O'Brien said that he lived near the home of H. C. Smith, and that he heard the pistol shot and

saw Gibson, whom he knew, standing by the car with something in his hand; and that he saw one of the men take hold of the other and try to take something from him but that he could not see what it was. Sim Gibson, a brother of J. P. Gibson, testified that Tallon stated to him, on the night of June 9, that he had tried to get the pistol away from the deceased and that it was shot while they were "tussling" over it and while both of them had their hands on it.

If what Tallon swore to is accepted as true, the presumption against suicide (*McKendree v. Insurance Co.*, 112 S. C., 335, 99 S. E., 806; *Dill v. Sovereign Camp, W. O. W.*, 126 S. C., 303, 120 S. E., 61, 37 A. L. R., 167; *Swofford v. Life Insurance Co.*, 159 S. C., 337, 157 S. E., 7, 37 C. J., 618), would be overcome, and there could be no question that the insured intentionally took his own life. But, as held by the trial Judge, when all the evidence in the case is considered, as it must be, the accuracy and truth of Tallon's story became a question for the jury, his credibility as a witness and the weight to be given his testimony being matters entirely for them. The statement of the two doctors as to the nature of the wound on Tallon's jaw, tending to show that it was not made by a bullet as claimed by him, and the testimony of other witnesses that they saw him by the roadside, immediately after they heard a pistol shot, "tussling" with the deceased over something, and the statement of another that Tallon told him that the deceased met his death in that way, tended to contradict his story of how Gibson was killed. Certainly, the jury might infer from this testimony that the insured came to his death in some way other than by suicide. We think, therefore, that the trial Judge correctly refused to grant a directed verdict on this ground.

The appellant further contends, however, that even if Gibson's death was due to accident, the plaintiff could not recover because the insured shot himself during the first policy year.

With regard to the interpretation to be given to such a provision as is contained in the policy before us, and to

similar ones, the rule is thus stated in 37 C. J., 552: "Regardless of the form of expression used, the provision applies to, and only to, an intentional self-killing; it does not cover death by accident or mistake. * * * On the other hand, the provision covers every case of intentional self-destruction regardless of the means adopted * * * the unlawfulness of the act is immaterial if the intention of insured is not thereby to take his own life." In 39 A. L. R., at page 1088, will be found a valuable annotation on the subject, with the following note of the annotator: "Provisions in life insurance policies limiting the insurers' liability, or exempting them from liability in the event of the 'death of the insured by his own hand or act,' or 'the self-destruction of the insured,' or in case he 'takes his own life,' and other expressions not employing the term 'suicide,' do not apply to death by accident." See, also, *Weber v. Interstate Bus. Men's Acc. Ass'n,* 48 N. D., 307, 184 N. W., 97, 16 A. L. R., 1390, with annotation at page- 1402. The rule, either directly or by implication, is sustained by the decisions of this Court, *Swofford v. Insurance Co., supra,* and *Dill v. Sovereign Camp, W. O. W., supra,* being among the more recent.

The appellant relies solely upon *Hartin v. Sovereign Camp, W. O. W.,* 124 S. C., 397, 117 S. E., 409. It appears that the policy involved in that case contained a provision that if the "insured came to his death by his own hand or act, whether sane or insane, the defendant is not liable." The trial Judge charged this provision in the words of the policy. There was a verdict for the defendant, and upon appeal by plaintiff, this Court approved the charge in the following language: "The appellant claims that if the insured killed himself accidentally, the defendant is liable. Appellant admits that his Honor charged in the words of the policy. There was no error here. No construction is necessary. The words are plain. The policy did not cover a case in which the insured kills himself." Mr. Justice Cothran, who con-

curred in the result upon the ground that no other reasonable inference could be drawn from the evidence than that the insured committed suicide, stated that "I do not agree that an accident is within the suicide exemption clause," citing *McKendree v. Insurance Co., supra,* as authority therefore.

We do not think that that decision may soundly be regarded as a precedent for the position taken by the appellant. If a majority of the Court intended to say, as seems to be indicated, that the provision of the policy covered death by accident, such view or holding, as pointed out by Mr. Justice Cothran, was in conflict with the *McKendree case* which was not specifically overruled. In any event, we choose to follow the general rule as stated, and to which this Court has adhered in its more recent decisions.

The appellant also complains that the trial Judge committed error in charging the jury that "suicide" and "self-destruction" are synonymous terms.

Webster defines suicide as the "act of taking one's own life voluntarily and intentionally  *  *  *  deliberate and intentional destruction of his own life by a person of years of discretion and of sound mind." Self-destruction is defined by the same authority as "the destruction of one's self or itself  *  *  *  self-murder; suicide." In 37 C. J., 552, we find: "The words 'die by his own hand or act,' or other equivalent expressions, when used in a provision of this nature, are deemed to mean and to be synonymous with 'suicide' or 'voluntary suicide.' They are not to be interpreted in their literal sense or so as to cover every possible case of death by the hand or act of insured."

From these authorities, and others that might be cited, it is clear that the trial Judge committed no error in charging as he did.

The phrase, "sane or insane," incorporated in such a provision gives no trouble. It is put there by the insurance companies in order that the provision may

not be defeated should the insured meet his death by suicide or self-destruction while insane. "A stipulation so worded is valid, self-executing, and will be applied in accordance with its plain terms." 37 C. J., 554.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.